| | |
|---|---|
| In Re The Matter of: ) | |
| ) | |
| DEBORAH BANKS AND ) | |
| AFGE Local 104 ) | AFGE ARBITRATION CASE NO: 0001-2005 |
| ) | |
| VS ) | |
| ) | |
| NATIONAL ARCHIVES AND ) | |
| RECORDS ADMINISTRATION ) | |
| 9700 PAGE AVENUE ) | |
| ST. LOUIS, MO 63132 ) | September 1, 2005 |
| ) | |

## POST – HEARING BRIEF

On Behalf Of The American Federation Of Government Employees

### INTRODUCTION

On July 21, and August 2, 2005, AFGE Local 104, herein referred to as the Union presented its case referencing the removal of Deborah Banks herein referred to as the grievant against National Archives Records Administration herein referred to as the Agency before Arnold Franke herein referred to as the Arbitrator.

The parties mutually agreed to present brief on or before September 9, 2005.

### ISSUES

The parties never mutually agreed upon the issue surrounding Deborah Banks removal. Thus, the Union is asserting the following issues for deliberation by the Arbitrator.

1. Was the grievant under absolute performance standards; and was the grievant under legal, regulatory performance standards?
2. Was the grievant on sufficient notice that releasing improper data to the wrong person would lead to removal?
3. Should the Agency have followed performance management procedures prior to removal of grievant?
4. Was the decision to remove the grievant consistent with the Agency's policy to be fair and equitable to all employees or was it excessive?

Exhibit 3

# I

**Was the grievant under absolute performance standards; and, under legal, regulatory performance standards?**

It is the position of the union that the performance standards issued to the grievant were absolute for the following reasons:

1. The grievant received her performance standards (see pg 63-67 in the Union submission). The performance standards reflected that the grievant was to perform at the 99% percentile in order to be rated fully successful which the Agency says is the acceptable level of competency.

The grievant has the following rating level above successful

1. Highly successful
2. Outstanding

According to the Agency's standards, the grievant is an outstanding employee. Furthermore it has been the Office of Personnel Management guidance and 5 U.S.C. 4301-5 guidance that standards should be written at the fully successful level. Moreover, these entities further provide that standards should be measurable, attainable and objective.

The position is further supported by the MSPB Case Law # DC-0432-00-0205-1-1(see Union exhibit # 11) Finally; the grievant reference standards never mention errors or put the grievant on notice as to what constitutes an error. Moreover OPM Guidance that is directed by OPM mandates that employees should be put on notice as to what is expected of them before the rating period. Furthermore, when an employee makes an error during the performance of their job/position, that error goes against the quality of their work and is performance based - not conduct.

For the above cited reasons the Union request that the Arbitrator rule that the standards the grievant was under are absolute; and, restore grievant to duty and make whole in everyway.

## II

**Was the grievant on sufficient notice that releasing protected information to an unauthorized party would lead to disciplinary actions or removal?**

It is the position of the Union that the grievant wasn't on sufficient notice that releasing protected information to an authorized party would lead to disciplinary actions or removal for the following reasons:

1. The agency failed to list the above reference requirement in the grievance performance standards. OPM guidance and 5 U.S.C. 4301-4321 provides that employees should know at the onset of their rating period what is expected of them. The agency is remiss and delinquent in following government-wide rules and regulations.
2. The record reflects that the Agency notified the grievant on June 7, 2004 that continuously releasing protected information to an unauthorized party would lead to disciplinary actions.

    a. On June 8, 2004 the record reflects that the grievant allegedly made/committed a second offense of releasing protected data to an unauthorized party. This alleged second offense led to the grievant's removal. It is the position of the Union that had the grievant been given sufficient notice at the time her performance standards were issued, she would have known what was expected of her.

Moreover, the Union submits that the grievant was emotionally unstable when she allegedly committed her second error because (she was stressed and unfocused) after she received a formal counseling regarding a previous alleged error she received on June 7, 2004. Therefore, it is the position of the Union that had the Agency allotted more time for the grievant to correct her performance; the Agency would have arrived at another decision.

Additionally, it is the position of the Union that the Agency should have treated the offense (s) as a performance based error which is permittable and allowable under Article XV of the Master Labor Agreement and Quality Assurance portion or her critical elements under NARA's Performance Management System. This process and procedure clearly outlines the method the parties agreed to in the Master Labor Agreement.

## III

**Should the Agency have followed the Performance Management procedures, prior to removal of grievant?**

It is the position of the Union that the Agency should have followed the Performance Management procedure and Article XV, of the Master Labor Agreement prior to removing the grievant for the following reasons:

1. The parties agree to consider alternative to traditional approaches to discipline. Alternative approaches offer an option to the use of traditional disciplinary sanctions. The goal is to positively change an employee's conduct through alternative means of correcting misconduct. Options to be considered include the employee's admission of guilt, apology, and commitment to improving future conduct. Based on the above referenced contractual provision, the Agency should have provided alternative approaches to discipline the grievant rather than removal. It is the Union's assertion that this alternative method should have been the performance management procedure.

2. The grievant's performance record reflects that she was a great producer and processed 8,567 requests and that the quality of her work was at the 99.78% level, (exhibit 13 pg.5 Union's submission). Therefore, the record reflects that the grievant was the best performer in her Core and in the Center. This is a second reason the Agency should have allotted her an error rate as an exceptional performer (see pg 57 and 58 of Union's submission) rather than remove her. Normally an employer wants to keep its best productive employees.

3. The agency's "Quality Assurance Program" mandated per committee's representative, _____ testimony that the intent of this policy was that whenever errors occurred the following would occur:

When it is determined an error was made, the coach will perform the following;

1. Counsel the technician on their error, and require the technician to correct their error.
2. Document the counseling.
3. If appropriate, arrange for training to correct the problem
4. Report the error in charts for establishment of the technician's error rate and quality performance calculations.

It is the Union's position that the above referenced policy was the procedure the Agency should have used when employees, to include the grievant, made errors.

It is the Union's assertion that had the policy been followed, the grievant would not have been terminated.

### IV

**Was the decision to remove the grievant consistent with the Agency's policy to be fair and equitable to all employees or was it excessive?**

It is the position of the Union that the Agency's decision to remove the grievant was not consistent, fair or equitable.

Through the production of collective Union exhibits and testimony, the Union has proved that the agency normally imposes the following progressive penalties for discipline, to wit:

1st offense – verbal counseling at least twice for each offense
2nd offense – written counseling at least twice for each offense
3rd offense - Warning Letters at least twice for each offense
4th offense - Letter of Reprimand
5th offense - Suspension for 1 day
6th offense – additional suspension (3-5 days)
7th offense – additional suspension (7-14 days)
8th offense – Removal (maybe)

In the Agency's treatment of Ms. Banks, the Agency didn't apply the same progressive punishment.

Furthermore, the record reflects that                    , the grievant's co-worker who also worked for Jane Green received the following progression of penalties before being removed:

1. Written Counseling letters for releasing wrong records on 1/23/04, 2/25/04, 5/14/04, 6/4/04 and 8/30/04.
2. Written counseling letter on 12/08/03 for 4 instances of releasing wrong records
3. 5 day suspension 1/99 altercation in the workplace
4. 3 day suspension releasing wrong record 5/18/04
5. 10 suspension 11/8/04 releasing protected information
6. Removal Letter for releasing protected information on 9/29/04 and 10/12/04

Thus it is the Union's assertion that the Agency was inconsistent, not fair or equitable in its treatment of Deborah Banks.

## CONCLUSION

It is the Union's heartfelt prayer that the Arbitrator deliberate on the above referenced issues and facts and render a decision to reinstate the grievant with full benefits to include but not limited to:

1. Back pay plus interest
2. Performance awards plus interest
3. All accrued leave
4. All accrued seniority
5. All accrued retirement – and thrift saving benefits

Submitted by:

*[signature]*

Rayburn Wilkins
AFGE National Representative

CERTIFICATION OF SERVICE

The attached document was delivered to the following on September 1, 2005:

| | |
|---|---|
| Brian Robinson<br>President<br>AFGE Local 104 | Hand Carried |
| Arnold Franke<br>Arbitrator | Register Mail |
| Mr. Peter E. Themelis<br>Chief, Employee Relations<br>and Benefits Branch<br>National Archives and Records Administration<br>College Park, Maryland | Regular Mail |

Date: *September 1, 2005*

Marsha Pointer
Administrative Technician